**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 21-1350
_____

MARISSA BIBBS,
*Appellant*

v.

TRANS UNION LLC

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
D.C. No. 2:20-cv-04514
District Judge: Honorable Mark A. Kearney

_____

No. 21-1527
_____

MICHAEL PARKE,
*Appellant*

v.

TRANS UNION LLC

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
D.C. No. 2:20-cv-04487
District Judge: Honorable Eduardo C. Robreno

_____

No. 21-1530

_____

FATOUMATA SAMOURA,
Appellant

v.

TRANS UNION LLC

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
D.C. No. 2:20-cv-05178
District Judge: Honorable Mark A. Kearney

_____

Argued on January 20, 2022

Before: JORDAN, RESTREPO, and SMITH, *Circuit Judges*.

(Opinion filed: August 8, 2022)

_____

Matthew B. Weisberg [**ARGUED**]
Weisberg Law
7 South Morton Avenue
Morton, PA 19070

   *Counsel for Appellants*


Camille R. Nicodemus [**ARGUED**]
Robert J. Schuckit
Schuckit & Associates
4545 Northwestern Drive
Zionsville, IN 46077

   *Counsel for Appellee*

_____

OPINION OF THE COURT
_____

**RESTREPO**, *Circuit Judge*.


   This matter was consolidated on appeal after originating from three separate district court cases claiming violations of the Fair Credit Reporting Act, *et seq.* ("FCRA"). 15 U.S.C. § 1681. Appellants Marissa Bibbs ("Bibbs"), Michael Parke ("Parke"), and Fatoumata Samoura ("Samoura") (collectively

"Appellants")[1] borrowed student loans from various lenders, and they made payments on those loans until they were unable to do so. Eventually, their respective lenders closed their accounts and transferred their loans. Shortly after the transfers, Appellants viewed their credit reports published by Appellee Trans Union LLC ("Trans Union"), each of which contained a negative "Pay Status" notation stating ">Account 120 Days Past Due<." The entries also stated that the loans were closed, transferred, and had account balances of zero. Appellants claim that the pay status notations were inaccurate because Appellants did not have any financial obligations to their previous lenders.

Appellants seek this Court's review of the district courts' orders granting Trans Union's motions for judgment on the pleadings. Specifically, Appellants challenge the standard the district courts applied to review the accuracy of their credit reports and the district courts' dismissal of Appellants' cases without ordering discovery. We will affirm the district courts' orders.

## I.    BACKGROUND

### A. Factual Background.

Because this is a consolidated matter, we will provide facts common to all Appellants and note any relevant distinguishing factors. Bibbs[2] borrowed student loans from the

---

[1] Bibbs' matter is the lead case in this consolidated matter.

[2] Bibbs borrowed two student loans from Navient in 2008 and four additional student loans from the same lender in 2010. On June 19, 2015, she made her last payment on each of the six loans, leaving balances due on each. On April 5, 2018, Navient closed all six of Bibbs's student loans and transferred them.

Department of Education/Navient ("Navient"), and Parke[3] and Samoura[4] borrowed student loans from Fedloan Servicing ("Fedloan"). Following nonpayment by each Appellant, their respective lenders closed their accounts and transferred them. Once the loans were transferred, their account balances with Navient and Fedloan, respectively, immediately went to zero, and all of their payment obligations were transferred. *See, e.g.*, App. 22-25. "Under the "Date Closed" data point, the student loans also noted ">Maximum Delinquency of 120 days" and a range of dates.  The range of dates corresponded to a table that appeared under the "Remarks" notice that reflected the "rating" of the loan.  The rating reflected the payment history over the preceding months and whether the loan was delinquent or "OK". *Id.*

None of the parties dispute that Appellants failed to maintain timely payments on their loans and that Trans Union accurately reported Appellants' accounts as late until the dates they were closed and the balances were transferred. It is also undisputed that Appellants owed no balance to their previous creditors once their accounts were transferred. Nonetheless, each Appellant's credit report contained the same negative pay status notation: ">Account 120 Days Past Due Date<" ("Pay

---

[3] Parke borrowed two student loans from Fedloan Servicing in 2009. He stopped making payments on both loans in December 2015. One year later, Fedloan closed his accounts and transferred them.

[4] Samoura borrowed a total of four student loans from Fedloan in 2008 and 2011. In 2014, she stopped making payments on her loans. In 2015, Fedloan closed her accounts and transferred them.

Status"). *See, e.g.*, App. 22-25. Appellants argue that the Pay Status notations on their credit reports are inaccurate and can mislead prospective creditors into incorrectly assuming that Appellants are currently more than 120 days late on loans that have been closed.

Shortly after each Appellant received their credit reports, their lawyer[5] sent a letter to Trans Union disputing the accuracy of the report saying: "The following accounts have a balance of $0 with a late status. This is simply incorrect. If my client owes them no money and has no payments that are needed, then it is impossible for their current status to be listed as late." App. 18, 112, 150-151. Counsel then requested that the erroneous information be corrected or removed. Trans Union launched an investigation into each disputed claim and provided each Appellant with snapshots of their credit reports.[6]

---

[5] The same counsel represented all three Appellants both at the district court and here on appeal.

[6] In all three cases, the district courts relied on the snapshots of Appellants' credit reports that Trans Union provided during the investigation, not the actual credit reports. Appellants do not oppose this on appeal. The district court in *Bibbs* noted that, even though both parties asked the Court to opine on the credit report's accuracy, "neither party provided an actual credit report for our review. The parties instead agreed to provide only the investigation results and agreed these results provide all the information we need to determine whether Trans Union's reporting of [Bibbs'] debt is inaccurate or misleading." App. 88.

Trans Union timely provided each Appellant with a report of the results of its investigation into their disputes ("Investigation Results"). We summarize Bibbs' Investigation Results report here, which is nearly identical to those of Parke and Samoura. The Investigation Results include a "Note on Credit Report Updates," which explains, for accounts "that have been closed and paid, Pay Status represents the last known status of the account." App. 20. It also provides definitions to help the requesting consumer understand the investigation results. *Id.* It provides a "Rating Key" to explain notations in the Investigation Results that indicate "the timeliness of [Bibbs'] payments for each month" the loan was held by Navient. *Id.* The "Rating Key" notes that "[a]ny rating that is shaded or any value in the account detail appearing with brackets (> <) may indicate that it is considered adverse." *Id.* The substance of the Investigation Results includes a copy of the requesting consumer's information as it now "appears on [her] credit report following our investigation." App. 22. One of the six identical snapshot excerpts included in the district court's opinion demonstrates the following regarding Bibbs' accounts: they each "(1) have a zero-dollar balance; (2) were last updated on April 5, 2018; (3) were closed on April 5, 2018; (4) had a maximum delinquency of 120 days in July 2017 and in April 2018; and (5) were closed because Navient transferred them to another office." App. 87. Each snapshot includes information on the payment status of each of Bibbs' accounts up until March 2018 but not beyond then.

For all three Appellants, the snapshots and credit reports maintained the Pay Status notations indicating that their accounts were more than 120 days past their respective due dates. Following the letters from Appellants' attorney and the subsequent investigations, Trans Union did not update or

correct the disputed information and, instead, stated that the reports were accurate.

### B. Procedural Background

The procedural facts are nearly identical in each of the three consolidated matters and are therefore jointly summarized here. We will note any distinguishing relevant facts. Appellants each filed nearly identical complaints or amended complaints[7] against Trans Union towards the end of 2020.[8] The complaints alleged violations of the FCRA against Trans Union resulting from its issuing credit reports that contained inaccurate or misleading information about Appellants and its refusal to revise its reports in response to their complaints. Trans Union filed its answers to Appellants' operative complaints[9] and then filed motions for judgment on the pleadings. The district courts in each of Appellants' matters entered an order and memorandum granting Trans Union's motions and denying Appellants' motions. This appeal followed. Bibbs, Parke, and Samoura's matters are consolidated before this Court.

_____

[7] After Samoura filed her complaint, Trans Union filed a motion for judgment on the pleadings and Samoura filed a partial cross-motion for judgment on the pleadings. The district court entered an order in favor of Trans Union. This appeal followed.

[8] Samoura filed her complaint on October 16, 2020. Her co-appellants filed amended complaints on  December 28, 2020.

[9] Trans Union filed its answers to each complaint or amended complaint on the following dates: January 11, 2021 (Bibbs); January 5, 2021 (Parke); and December 31, 2020 (Samoura).

## II.  JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction under 28 U.S.C. § 1291. We review the denial of Appellants' motions for judgment on the pleadings *de novo. Mid-Am. Salt, LLC v. Morris Cty. Coop. Pricing Council*, 964 F.3d 218, 226 (3d Cir. 2020). We analyze a motion for judgment on the pleadings under Federal Rule of Civil Procedure Rule 12(c) "under the same standards that apply to a Rule 12(b)(6) motion." *Wolfington v. Reconstructive Orthopaedic Assocs. II PC*, 935 F.3d 187, 195 (3d Cir. 2019) (internal quotations omitted). Under Rule 12(c), "a court must accept all of the allegations in the pleadings of the party against whom the motion is addressed as true and draw all reasonable inferences in favor of the non-moving party." *Allstate Prop. & Cas. Ins. Co. v. Squires*, 667 F.3d 388, 390 (3d Cir. 2012) (citation omitted). A court may grant a Rule 12(c) motion "if, on the basis of the pleadings, the movant is entitled to judgment as a matter of law." *Fed Cetera, LLC v. Nat'l Credit Servs., Inc.*, 938 F.3d 466, 469 n.7 (3d Cir. 2019) (internal quotations and citation omitted). A plaintiff can survive a Rule 12(c) motion if her complaint contains "sufficient factual matter to show that the claim is facially plausible, thus enabling the court to draw the reasonable inference that the defendant is liable for [the] misconduct alleged." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009)) (internal quotations omitted).

## III.  DISCUSSION

### A. Background of the FCRA

The FCRA "was crafted to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate,

relevant, and current information in a confidential and responsible manner." *Cortez v. Trans Union, LLC*, 617 F.3d 688, 706 (3d Cir. 2010) (internal quotations and citation omitted). "Congress intended to promote efficiency in the nation's banking system and to protect consumer privacy." *Id.* (citing *TRW Inc. v. Andrews*, 534 U.S. 19, 24 (2001)); 15 U.S.C. § 1681(a). "The FCRA places certain duties on those who furnish information to consumer reporting agencies." *SimmsParris v. Countrywide Fin. Corp.*, 652 F.3d 355, 357 (3d Cir. 2011). For example, § 1681s-2(a)(2) requires furnishers to correct any information they later discover to be inaccurate. Furnishers must also provide consumer reporting agencies ("CRAs") with the "date of delinquency" when an account is placed for collection or charged to profit or loss. 15 U.S.C. § 1681s-2(a)(5)(A). Consumer agencies, for their part, must strive to "assure maximum possible accuracy" in credit reports. 15 U.S.C. § 1681e(b).

After a credit reporting agency receives a notice pursuant to § 1681i(a)(2) disputing the completeness or accuracy of information provided by the agency, "the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate." 15 U.S.C. § 1681i(a)(1)(A). "Thus, we can assume that absent any indication that the information is inaccurate, the statute does not mandate" further investigation. *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997); *see also Seamans v. Temple Univ.*, 744 F.3d 853, 865 (3d Cir. 2014) (stating that "where a given notice contains only scant or vague allegations of inaccuracy, a more limited investigation may be warranted."). An investigation into a consumer's complaint must be "reasonable." *SimmsParris*, 652 F.3d at 359. "[A] reasonable procedure is one that a reasonably prudent person would undertake under the circumstances." *Seamans*, 744 F.3d

at 864 (internal quotations and citation omitted). In addition, "when assessing reasonableness, the factfinder must balance 'the potential harm from inaccuracy against the burden of safeguarding against such inaccuracy.'" *Id.* at 865 (quoting *Cortez*, 617 F.3d at 709). Whether an investigation is reasonable "is normally a question for trial unless the reasonableness or unreasonableness of the procedures is beyond question." *Cortez*, 617 F.3d at 709 (internal citation and quotations omitted).[10]

### B. Issues on Appeal

There are three issues requiring this Court's review: (1) whether the district courts erred in applying the "reasonable creditor" standard; (2) whether Trans Union's credit reports for Appellants are accurate or misleading under the "maximum possible accuracy" requirement of § 1681e(b) of the FCRA; and (3) whether the district courts erred in dismissing Appellants' cases without ordering discovery. We will address each issue in turn.

#### a. What Standard Applies in Determining Accuracy under § 1681e(b)?

Before we determine whether Appellants' credit reports are inaccurate or misleading and whether the district courts erred in dismissing Appellants' cases, we must first establish the proper standard to apply. Appellants argue that the district courts erred in applying the "reasonable creditor" standard to

---

[10] The First Circuit recognizes that a plaintiff bears the burden of showing that the investigation was unreasonable. *See Chiang v. Verizon N. Eng. Inc.*, 595 F.3d 26, 37 (1st Cir. 2010).

determine whether Appellants' credit reports issued by Trans Union are misleading.

Appellants would like us to view the Pay Status entries myopically;[11] they argue that even if the reports would not mislead a "reasonable creditor," other furnishers or potential creditors could be misled. Appellants correctly point out that the FCRA authorizes creditors and others to use credit reports when making decisions that affect consumers. This may include potential employers, landlords, insurers, or service providers. § 1681b(a)(3). Indeed, they point out that while it is unclear as to whom the "reasonable creditor" describes, the FCRA does not limit report access only to individuals and entities sophisticated in the art of reading credit reports. *See* 15 U.S.C.A. § 1681a(d)(1) (defining "creditor").

Trans Union argues that the district courts properly applied the reasonable creditor standard in concluding that reasonable creditors would think the Pay Status notations were only "historical" and, as a result, would never base "adverse" decisions on that data. In response to Appellants' argument that an unsophisticated creditor like a local landlord might find the

---

[11] At the heart of Appellants' contention is that the district court viewed the credit report excerpt in its entirety instead of considering the data point "Pay Status" in isolation. *See* Appellant's Br. 20 (criticizing district courts for concluding "the 'Pay Status' entries are not misleading . . . in light of other information in the credit reports") Appellant's Br. at 30-31 (arguing that there is only one conclusion to reach "without reference to other information in the credit reports"); Appellant's Br. at 32 (taking issue with Court's conclusion that credit report is accurate "in light of other data entries in the reports"); and 36 (urging that the approach of "read[ing] all the other entries before making a decision" has flaws).

Pay Status notations on the credit reports misleading, Trans Union asserts that even if "someone, somewhere, young or old, unsophisticated or maybe just in a hurry, might mis-read or misunderstand Appellee's reporting," that is not the proper standard under which courts should evaluate FCRA claims. Appellee Br. at 32. Trans Union asserts that "the fact that some user somewhere could possibly squint at a report and imagine a reason to think twice about its subject would not render the report objectively misleading." *Erickson v. First Advantage Background Servs. Corp.*, 981 F.3d 1246, 1252 (11th Cir. 2020). Trans Union notes that numerous district courts throughout the country have applied the reasonable creditor or lender standard to similar cases.[12]

Under the FCRA, the term "creditor" means "***any person*** who regularly extends, renews, or continues credit; any person who regularly arranges for the extension, renewal, or continuation of credit; or any assignee of an original creditor who participates in the decision to extend, renew, or continue credit." 15 U.S.C.A. § 1691a(e)

---

[12] *See, e.g., Jones v. Equifax Info. Servs., LLC*, No. 2:18-cv-2814, 2019 WL 5872516, at *4 (M.D. Tenn. Aug. 8, 2019) (ruling that a credit report showing a monthly payment obligation when the account was closed and had a zero-dollar balance was not materially misleading because "a reasonable prospective lender would understand [that] the report showed a past obligation only"); *Thomas v. Equifax Info. Servs., LLC*, No. 3:19-cv-286, 2020 WL 1987949, at *6 (S.D. Ohio Apr. 27, 2020) (ruling "no reasonable person would be misled into believing that [the plaintiff] has any ongoing monthly obligation on this installment loan" when the account was reported closed with a zero-dollar balance).

(emphasis added).[13] Further, the FCRA defines "person" to include "***any individual***." 15 U.S.C.A. § 1681a(b) (emphasis added).[14] Appellants' argument implies that the reasonable creditor standard excludes unsophisticated creditors who make determinations on individuals using credit reports. We disagree. It is unreasonable to assume that Congress, in requiring the "*maximum* possible accuracy" and allowing individuals and entities other than sophisticated creditors to use credit reports to make decisions, drafted the FCRA with the intention that only sophisticated creditors should understand the information these reports contain. *See* 15 U.S.C. § 1681b(f) (stating that a person shall not "use or obtain a consumer report" unless it is obtained for a permissible purpose[15] but not limiting access to established sophisticated creditors). If that were the case, individuals other than typical sophisticated creditors would not be allowed to access individuals' credit

---

[13] Section 1681a states that the term "creditor" has the same meaning under 15 U.S.C.A. § 1691a.

[14] The full definition provides that a "person" under the FCRA is "any individual, partnership, corporation, trust, estate, cooperative, association, government or governmental subdivision or agency, or other entity." 15 U.S.C.A. § 1681a(b).

[15] A permissible purpose under the FCRA requires that the creditor intend to use the information in connection with a "credit transaction involving the consumer." 15 U.S.C. § 1681b(a)(3)(A). The FCRA defines "credit" to mean "the right granted by a creditor to a debtor to defer payment of debt or to incur debts and defer its payment or to purchase property or services and defer payment therefor." *Id.* §§ 1681a(r)(5), 1691a(d).

reports or use credit reports to make either favorable or adverse decisions on candidates.

Although the term "creditor" broadly encompasses both sophisticated and unsophisticated individuals and entities alike, the term "reasonable creditor" does not accurately reflect the intent of the FCRA. The statute does not limit the permissible use of consumer reports to creditors; rather, the provision contemplates a range of permissible users including, but not limited to, potential and actual employers, investors, and insurers. *See* 15 U.S.C. § 1681b(a). To account for those possibilities, we adopt a "reasonable reader" standard which determines how a reasonable reader would have comprehended a report. *See, e.g., Twumasi-Ankrah v. Checkr, Inc.*, 954 F.3d 938, 946-47 (6th Cir. 2020) (Bush, J., *dissenting*) (agreeing with the majority on the legal standard and looking to how "a reasonable reader" would have understood a report); *Barrow v. Trans Union, LLC*, No. 20-CV-3628, 2021 WL 1424681, at *5 (E.D. Pa. Apr. 13, 2021) (reviewing credit report "from the perspectives of a typical, reasonable reader and a typical, reasonable creditor"). A court applying the reasonable reader standard to determine the accuracy of an entry in a report must make such a determination by reading the entry not in isolation, but rather by reading the report in its entirety. On the other hand, if an entry is inaccurate or ambiguous when read both in isolation and in the entirety of the report, that entry is not accurate under § 1681e(b).

Further, in the context of the FCRA, the reasonable reader standard does not exclude unsophisticated creditors. Rather, a plain reading of the statute's text makes it clear that *any* person (or their assignee) who regularly extends, renews, or continues credit is a creditor. Therefore, the reasonable reader standard runs the gamut to include sophisticated entities

like banks and less sophisticated individuals such as local landlords.

###### b. The Accuracy of Appellants' Credit Reports under § 1681e(b)

Applying the reasonable reader standard, Appellants' question remains: Are their credit reports containing the Pay Status notations misleading or inaccurate? Appellants argue that, because of the allegedly inaccurate Pay Status notations on Appellants' credit reports, Trans Union is liable for negligent noncompliance under § 1681e(b) of the FCRA, which requires CRAs to include only accurate information on consumers' credit reports. 15 U.S.C. § 1681e(b). This Court must decide whether the district courts erred in determining that the information in Appellants' credit reports is sufficient under § 1681e(b)'s "maximum possible accuracy" standard and that Trans Union is not otherwise liable for negligent noncompliance. *Id.* Negligent noncompliance with FCRA § 1681e(b) consists of four elements: "(1) inaccurate information was included in a consumer's credit report; (2) the inaccuracy was due to defendant's failure to follow reasonable procedures to assure maximum possible accuracy; (3) the consumer suffered injury; and (4) the consumer's injury was caused by the inclusion of the inaccurate entry."[16] *Cortez*, 617 F.3d at 708 (quoting *Philbin v. Trans Union Corp.*, 101 F.3d 957, 963 (3d Cir. 1996)). Section 1681e(b) provides in relevant part: "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the

---

[16] Appellants also allege willful violations of the FCRA, which require the additional showing that the defendant acted knowingly or with reckless disregard of the statute's terms. *Seamans*, 744 F.3d at 868 (3d Cir. 2014).

individual about whom the report relates." 15 U.S.C. § 1681e(b). This standard mandates "more than merely allowing for the possibility of accuracy." *Cortez*, 617 F.3d at 709. An inaccuracy is the threshold requirement for a § 1681e(b) claim. *Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1156 (11th Cir. 1991) (noting that the FCRA "implicitly requires" evidence that a CRA "prepared a report containing 'inaccurate' information" in order to demonstrate a prima facie case of a § 1681e(b) violation); *see also Dalton v. Capital Assoc. Indus. Inc.*, 257 F.3d 409, 415 (4th Cir. 2001) (stating that an inaccurate report is one that is "patently incorrect" or "misleading in such a way and to such an extent that it can be expected to have an adverse effect."). Moreover, "the distinction between 'accuracy' and 'maximum possible accuracy' is not nearly as subtle as may at first appear," and "it is in fact quite dramatic." *Cortez*, 617 F.3d at 709. As this Court explained, even if the information in a credit report "is technically correct, it may nonetheless be inaccurate if, through omission, it creates a materially misleading impression." [17]

---

[17] This case differs from other matters this Court has considered concerning allegations of inaccurate information on credit reports, holding that the negative reporting was inaccurate. In *Cortez*, the appellant's identity was mistaken for someone on a list of suspected terrorists whose name closely resembled hers. 617 F.3d at 688 (ruling in favor of appellants). In *Philbin v. Trans Union Corp*, appellants disputed a tax lien that was erroneously included in their report. 101 F.3d 957, 963 (3d Cir. 1996) (ruling in favor of appellants). In *Cushman v. Trans Union Corp.*, this Court examined a credit line that was fraudulently opened in appellant's name. 115 F.3d 220, 225 (3d Cir. 1997) (ruling in favor of appellants). Unlike the information disputed in the matter before us, in each of the

*Seamans*, 744 F.3d at 865 (internal quotations and citation omitted).

Appellants argue that the disputed Pay Status is misleading. Appellant Br. at 30. The entry on the report states, "Pay Status: >Account 120 Days Past Due Date<." There are no verbs such as "is" or "was" or any other language in this entry that make "patently" clear whether it means "currently" 120 days past due or "historically" 120 days past due. Appellants assert that, "without reference to other information in the credit reports, the only way to read this entry is to conclude it means 'currently' past due." Appellant Br. at 31. This is a critical point on which Appellants diverge from the district courts and Trans Union. Trans Union asserts that the Pay Statuses, when read in the entirety of the reports, are clearly historical notations. Trans Union therefore argues that the reports are accurate and do not leave room for ambiguity. For example, as the district court in *Bibbs* pointed out, the example snapshot[18] states clearly that the loan is closed. The snapshot of the report states in all capital letters, "ACCT CLOSED DUE TO TRANSFER; TRANSFERRED TO ANOTHER OFFICE." It also says, "Date Closed: 04/05/2018." These are two clear statements that the account is closed. Trans Union further disagrees with Appellants' argument that the past due status can create ambiguity regarding the Appellants' financial obligations, because the report lists the balance of the loan as "$0." Trans Union

---

three previous cases, the disputed information was never true at any point in time.

[18] In its opinion, the district court included an image of Bibbs' snapshot. *See* App. 87; *Bibbs v. Trans Union, LLC*, 521 F. Supp. 3d 569, 573 (E.D. Pa. 2021).

maintains that it has not omitted any pertinent information regarding the status of the account that could create a materially misleading impression. Trans Union asserts that this is logical: one simply cannot owe payment on an account that is closed, even if the pay status lists it as 120 days past due.

As we hold here, to determine whether Trans Union is in violation of § 1681e(b), we apply the reasonable reader standard. Each credit report contains the "120 Days Past Due" Pay Status notation and the two conspicuous statements on the report stating that the respective account is closed. Even if the information on Appellants' credit reports is technically accurate, is a reasonable creditor that reads Appellants' credit reports in their entirety likely to incorrectly believe that Appellants currently owe their respective former creditors payments?

Perhaps Trans Union could have made the reports even clearer, but the reports, as is, are clear. We apply the reasonable reader standard reading the report in its entirety. Although § 1681e(b) sets the goal for credit reporting agencies to achieve the "*maximum* possible" amount of accuracy, we recognize that the idea of a maximum in this context is an elusive one. The possibility of further clarity is not an indication of vagueness; just because a report could potentially be a bit clearer does not mean that it is not very clear at present. Appellants' reports contain multiple conspicuous statements reflecting that the accounts are closed and Appellants have no financial obligations to their previous creditors. These statements are not in conflict with the Pay Status notations, because a reasonable interpretation of the reports in their entirety is that the Pay Status of a closed account is historical information.

We therefore agree with the district courts' orders and hold that Appellants' credit reports are accurate under § 1681e(b).

    c.    The   Reasonableness   of   Trans   Union's Reinvestigation Procedure under § 1681i(a)

Appellants also argue that the district court erred in dismissing their claims that Trans Union violated § 1681i(a) by "failing to conduct a good faith investigation and failing to permanently delete or modify inaccurate information after receiving [Appellants'] dispute." App. 109. We disagree.

If a consumer disputes "the completeness or accuracy of any item of information" in his consumer report and notifies the consumer reporting agency of the dispute, § 1681i(a) requires the agency to "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate." 15 U.S.C. § 1681i(a)(1)(A). The parties before us agree that, before a court can consider whether an agency's reinvestigation was reasonable, it must first determine that the disputed information was in fact inaccurate. As the First Circuit noted in *DeAndrade v. Trans Union LLC*, "it is difficult to see how a plaintiff could prevail on a claim for damages under § 1681i without a showing that the disputed information disclosed by the credit agency was, in fact, inaccurate." 523 F.3d 61, 67 (1st Cir. 2008). And in *Cushman*, we endorsed the district court's view that "[t]he decisive inquiry [for the plaintiff's § 1681i claim] is whether Trans Union could have determined that [there was an inaccuracy] if it had reasonably investigated the matter". 115 F.3d at 226. We therefore join "the weight of authority in other circuits[,]" which indicates that, "without a showing that the reported information was in

fact inaccurate, a claim brought under § 1681i must fail."[19] *DeAndrade*, 523 F.3d at 67; *see also, e.g., Denan*, 959 F.3d at 296-98; *Shaw v. Experian Info. Sols., Inc.*, 891 F.3d 749, 756 (9th Cir. 2018); *Wright v. Experian Info. Sols., Inc.*, 805 F.3d 1232, 1242 (10th Cir. 2015); *Cahlin*, 936 F.2d at 1160. In holding that a plaintiff must show an inaccuracy to proceed under either § 1681e(b) or § 1681i(a), we also conclude that information that is technically accurate but materially misleading is sufficient to trigger § 1681i(a), just as it is for § 1681e(b).[20] *See Shaw*, 891 F.3d at 756 ("[W]e apply the same understanding of 'inaccurate' in analyzing § 1681e and § 1681i claims."); *cf. Cortez*, 617 F.3d at 713 (noting that information that is "misleading or inaccurate" triggers a duty under a different subsection of § 1681i(a)); *Seamans*, 744 F.3d at 865 (adopting the "materially misleading" standard for claims under 15 U.S.C. § 1681s-2(b), which "imposes essentially the same [reinvestigation] obligation on furnishers of information" as § 1681i(a) does on consumer reporting agencies, *Chiang v. Verizon New England Inc.*, 595 F.3d 26, 37 (1st Cir. 2010)).

---

[19] We note that this position does not undermine § 1681i(a)(3), which allows a consumer reporting agency to terminate a reinvestigation if it "reasonably determines that the dispute by the consumer is frivolous or irrelevant[.]" 15 U.S.C. § 1681i(a)(3)(A).

[20] Textually, while the phrase "maximum possible accuracy" does not appear in § 1681i the way it does in § 1681e(b), the former provision does allow a consumer to dispute the "completeness or accuracy" of information and requires a CRA to delete or modify anything that is "inaccurate or incomplete." 15 U.S.C. § 1681i(a)(5)(A) (emphasis added).

As we have already held, the Pay Status entries in Appellants' credit reports are neither inaccurate nor misleading to a reasonable reader. That forecloses Appellants' claims under § 1681i(a), just as it does their § 1681e(b) claims. Accordingly, the district courts did not err in dismissing Appellant's complaints.

### d. Discovery on Accuracy of Appellants' Credit Reports

Appellants argue that discovery is necessary to determine whether the Pay Status notations would mislead a creditor and whether creditors are likely to make adverse decisions against Appellants based on the lower credit scores caused by the Pay Status entries..[21] The reasonable reader standard is an objective standard, reading the report in its

---

[21] The district courts evaluating similar matters are not currently in agreement as to whether discovery is necessary, with the majority dismissing analogous claims without ordering discovery. *See Ostrander v. Trans Union LLC*, No. CV 20-5227, 2021 WL 3271168, at *8 (E.D. Pa. July 30, 2021) (in a factually analogous case, stating that "no reasonable creditor would understand the monthly payment notation to indicate a current payment obligation. . . . [R]eporting historical monthly payment amounts on closed accounts with a zero balance is not inaccurate or misleading.") (citations omitted); *but see Barrow v. Trans Union, LLC*, 2021 WL 1425681, at *5 (E.D. Pa. 2021) (rejecting *Bibbs* on "strikingly similar" facts, denying Trans Union's Motion for Judgment on the Pleadings, and ordering discovery on the question of how the plaintiff's credit report "would or would not [be] interpret[ed].").

entirety, not a subjective one.[22] Because the credit reports are accurate under § 1681e(b) as a matter of law, discovery is not necessary.

### IV.    CONCLUSION

Accordingly, we will affirm the district courts' order granting Trans Union's Motion for Judgment on the Pleadings.

---

[22] Even if the Pay Status notation decreases Appellants' credit scores, this sort of adverse historical notation and consequence is permissible under § 1681c(b). Unfortunately for Appellants, this may indeed lead creditors to make adverse decisions affecting Appellants, but it would be within their right to do so because Appellants' credit reports are accurate.